# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

KEITH DAVIS,
      Plaintiff,

      v.

CAROLYN COLVIN, Acting
Commissioner of the Social Security
Administration,
      Defendant.

No. 3:15-cv-1327 (SRU)

## RULING AND ORDER

Keith Davis appealed from the adverse decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income. After the Commissioner filed her Answer, Davis moved for judgment on the pleadings (doc. # 15). Davis accompanied his motion with a statement of facts (doc. # 17). The Commissioner filed a cross motion to affirm the decision of the Administrative Law Judge ("ALJ"), who had denied Davis' application. On August 17, 2016, I held oral argument on the parties' cross-motions and took the matter under advisement. For the reasons set forth below, the Commissioner's motion to affirm the ALJ's decision is granted and Davis' motion to vacate the ALJ's decision and remand the case is denied.

## I.  Background

Davis filed his application for disability insurance benefits and supplemental social security benefits on October 2, 2012, alleging an onset date of March 22, 2011. Davis claims that he suffers from various respiratory diseases and a degenerative disc disease that causes pain in his lumbar spine (lower back). Davis also alleges a past history of depression and alcohol abuse. The existence of Davis' conditions is not in dispute.

After conducting a thorough review of Davis' medical history, the ALJ concluded that Davis' testimony regarding the severity of his functional limitations lacked credibility.  Based on that determination, the ALJ held that Davis had the ability to perform sedentary work in an environment that is free of moderate to extreme environmental irritants, such as fumes, odors, dusts, and gasses.  Based on the testimony of a vocational expert, the ALJ concluded that Davis' condition did not render him unable to find suitable work notwithstanding his functional limitations.  Accordingly, the ALJ held that Davis was not disabled.

Davis appeals the ALJ's decision, asserting that it was not supported by substantial evidence.  Specifically, Davis contends that the ALJ erred in making her credibility assessment of Davis.  Davis' memorandum in support of his motion points to specific instances in which, he alleges, the ALJ misconstrued, misrepresented, or omitted objective medical evidence that would corroborate the credibility of Davis' subjective statements and testimony.  Had the ALJ properly considered such evidence, Davis argues, she would have found Davis credible and would have relied on his testimony to conclude that Davis was unable to perform sedentary work.

## II.    Standard of Review

The standard of review of a Social Security disability determination under 42 U.S.C. § 405(g) is well settled.  It involves two levels of inquiry.  First, the court must decide whether the Commissioner applied the correct legal principles in making her determination.  Second, the court must decide whether the Commissioner's determination is supported by substantial evidence.  *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998); *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008).  Substantial evidence means "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotation marks omitted).  It need not compel the Commissioner's decision; rather it is evidence that "a reasonable mind might accept

as adequate to support [the] conclusion" being challenged. *Id.*; *see also Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). In determining whether the Commissioner's decision is supported by substantial evidence, the court must consider the entire record, examining the evidence from both sides. *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

It is not the court's function to determine *de novo* whether the claimant was disabled nor to substitute its opinion for that of the Commissioner. Rather, the court must determine whether the Commissioner's decision is supported by substantial evidence in the record as a whole and whether it is based on an erroneous legal standard. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). If the court finds that substantial evidence supports the Commissioner's decision and that the correct legal standards were applied, that decision must be upheld, even if substantial evidence supporting the plaintiff's position also exists. *See Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990).

## III.   Discussion

### A.   Relevant Law

In determining whether a claimant is disabled, the ALJ must conduct a "five-step sequential evaluation process." 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). Step one requires the ALJ to determine whether the claimant is engaged in substantial gainful activity. *Id.* at §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Step two requires the ALJ to consider the medical severity of the claimant's alleged impairment(s) to determine whether it is sufficiently severe and meets the duration requirement in section 404.1509. *Id.* at §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step three also requires the ALJ to consider the medical severity of the claimant's alleged impairment(s) and whether such condition meets or equals a specific impairment listed in Appendix 1 to Subpart P of 20 C.F.R. § Pt. 404. *Id.* at §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

Before going from step three to step four, the ALJ must identify a residual functional capacity ("RFC") that is based on the ALJ's evaluation of objective medical evidence and the claimant's subjective evaluation of his impairment(s). *Id.* at §§ 404.1520(a)(4), 404.1520(e), 416.920(a)(4)(i), 416.920(e). Based on the RFC, the ALJ must determine whether the claimant is still able to perform his or her past relevant work. *Id.* at §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, if the ALJ determines that the claimant can no longer perform his or her past relevant work, the ALJ must consider the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work. *Id.* at §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Often that step is evaluated using a vocational expert who testifies to the availability of jobs for a claimant given his or her relevant characteristics and experience. *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014).

Davis challenges the ALJ's decision at step five of the evaluation process. Davis' primary contention, however, concerns the ALJ's identification of Davis' RFC, on which the ALJ relied in evaluating step five.

A plaintiff's RFC is "what an individual can still do despite his or her limitations . . . ." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (internal citations and quotation marks omitted).

> Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Id.* (internal citations and quotation marks omitted). RFC is "an assessment based upon all of the relevant evidence . . . [which evaluates a claimant's] ability to meet certain demands of jobs, such as physical demands, mental demands, sensory requirements, and other functions . . . ." 20 C.F.R. § 220.120(a).

4

When arriving at an appropriate RFC, the ALJ must undertake a two-step process to evaluate the claimant's assertions of pain and other limitations. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010); *Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7P, 1996 WL 374186, at *2 (S.S.A. July 2, 1996). First, the ALJ must determine whether the claimant "suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. *Genier*, 606 F.3d at 49. That is because subjective assertions of pain, alone, cannot be the basis of a finding of disability. *Id.* (citing 20 C.F.R. §§ 404.1529(a), 416.929(a)). Next, if the ALJ has found that the claimant suffers such an impairment, the ALJ must evaluate the "intensity and persistence of [claimant's] symptoms . . . [to] determine how [the claimant's] symptoms limit [his or her] capacity for work[.]" 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

In evaluating the intensity and persistence of the claimant's symptoms, the ALJ must consider the entire record, including objective medical evidence and the claimant's subjective reports of pain and other limitations. *Genier*, 606 F.3d at 49. Though objective evidence is preferred, and must be carefully considered, the ALJ may not reject a claimant's statements about the intensity and persistence of his or her pain or other symptoms, or about the effect those symptoms have on his or her ability to perform work, "solely because the available objective evidence does not substantiate such statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

Often, it will be impossible to objectively document a claimant's pain or other symptoms that have a limiting effect on his or her ability to perform work. *Id.* at §§ 404.1529(c)(3), 416.929(c)(3). In such circumstances, the ALJ must "make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7P, 1996

WL 374186, at *2; *see also* 20 C.F.R. §§ 404.1529(c)(3), 404.1529(c)(4), 416.929(c)(3), 404.1529(c)(4).

In undertaking an assessment of the claimant's credibility, the ALJ must consider evidence relating to the following factors:

(i)  the claimant's daily activities;

(ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms;

(iii) precipitating and aggravating factors;

(iv) the type, dosage,  effectiveness, and side effects of any medication the claimant takes or has taken to alleviate their pain or other symptoms;

(v) treatment, other than medication, the claimant receives or has received for relief of their pain or other symptoms;

(vi) any measures the claimant used or has used to relieve their pain or other symptoms (e.g., lying flat on their back, standing for 15 to 20  minutes every hour, sleeping on a board, etc.); and

(vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  *Skillman v. Astrue*, 2010 WL 2541279, at *6 (W.D.N.Y. June 18, 2010).

A plaintiff's work record is one of many factors the ALJ considers in determining a claimant's credibility.  *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998).  A plaintiff's complaints about the inability to perform certain work may be undermined by the fact that the plaintiff's prior work experience shows that he or she can perform such work.  *Hamilton v. Astrue*, 2012 WL 1029536, at *6 (N.D.N.Y. Mar. 26, 2012).  Additionally, a plaintiff's statements "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . . ."  SSR 96-7P, 1996 WL 374186, at *7 ("[T]he individual's statements may be less credible . . . if the medical . . . records show that the individual is not following the

6

treatment as prescribed and there are no good reasons for this failure.").  However, an ALJ may

not draw an inference about an individual's failure to seek treatment "without first considering

any explanations that the individual may provide, or other information in the case record, that

may explain . . . [the] failure to seek medical treatment."  *Id.*

      The ALJ "is not required to accept the claimant's subjective complaints without question;

he may exercise discretion in weighing the credibility of the claimant's testimony in light of the

other evidence of record."  *Genier*, 606 F.3d at 49.  That said, the ALJ's "finding that the witness

is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary

review of the record."  *Williams on Behalf of Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir.

1988).  The "ALJ's credibility determination is generally entitled to deference on appeal."

*Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013).  If set forth with specificity, credibility

findings of the ALJ will be reversed "only if they are 'patently unreasonable.'"  *Pietrunti v. Dir.,*

*Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) (quoting *Lennon v.*

*Waterfront Transport*, 20 F.3d 658, 661 (5th Cir. 1994)).

   **B.**  <u>The ALJ's Decision</u>

      In rendering her decision, the ALJ followed the prescribed five-step sequential evaluation

process. 20 C.F.R. §§ 404.1520, 416.920.  At step one, the ALJ found that Davis has not

engaged in substantial gainful activity since March 22, 2011, the alleged onset date of his

disability.  R. at 13.  At step two, the ALJ found that Davis had the following severe

impairments: bullous lung disease with pulmonary fibrosis; COPD/asthma; hypertension; mild

degenerative disc disease with severe central canal stenosis at L4-5 (predominantly due to

epidural lipamatosis); a history of depression; and a history of substance abuse, currently in

remission.  *Id.*  At step three, the ALJ found that, notwithstanding the above-mentioned severe

impairments, Davis does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1 to Subpart P of 20 C.F.R. § Pt. 404.  R. at 14.  The ALJ then found that Davis had an RFC that would permit him to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a).  As part of her RFC determination, the ALJ found that Davis is unable to climb ladders, ramps, scaffolds or stairs, and must avoid even moderate exposure to environmental irritants, such as fumes, odors, or gasses.  R. at 17.  At step four, based on testimony of the vocational expert, the ALJ determined that Davis is unable to perform his past relevant work, but that there are jobs in the national economy that Davis can perform.  R. at 22.  Accordingly, the ALJ found that Davis was not disabled.  *Id.*

Given the lack of objective medical evidence regarding Davis' ability to perform sedentary work, the ALJ looked to Davis' subjective assessment of his abilities.  In evaluating that assessment, the ALJ found that Davis lacked credibility.  In support of the ALJ's credibility determination, the ALJ pointed to numerous circumstances in which Davis' statements were internally inconsistent or inconsistent with the objective medical evidence.  Concluding that Davis' subjective assessment lacked credibility, the ALJ discounted Davis' assertions that he is unable to perform sedentary work.

### C.  Credibility Determination

As stated above, if a claimant's statements about the intensity, persistence, or functionally limiting effect of pain or other symptoms is not substantiated by objective medical evidence, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."  *Dillingham v. Colvin*, 2015 WL 1013812, at *5 (N.D.N.Y. Mar. 6, 2015) (quoting SSR 96–7, 1996 WL 374186, at *2).

Davis raises multiple challenges to the ALJ's credibility determination.  First, he argues that the ALJ failed to properly consider the seven factors that are required under step two of the credibility determination.  Second, Davis argues that the ALJ erred in analyzing objective medical evidence regarding the intensity, persistence and limiting effects of his symptoms.  Finally, Davis contends that the ALJ misconstrued his subjective evaluation of his own condition and functional limitations.

1.  *Seven Factors*

Davis contends that the ALJ failed to properly consider the seven-factor test used to determine whether Davis' testimony was credible.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  As discussed above, there is no need for the ALJ to "slavishly" apply each factor in his or her written decision.  *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).  Rather, based on a review of the decision, it must be clear that each factor was considered.

The ALJ properly considered each factor.  First, the ALJ considered Davis' alleged daily activities and noted that his alleged inability to perform many daily functions was belied by his admission that he was able to prepare simple meals for himself and that he attended church multiple times per week.  R. at 21, 22.  Second, the ALJ considered the location, duration, frequency, and intensity of Davis' pain and other symptoms.  The ALJ noted that Davis' complaints of debilitating back pain were undermined by his admission that he worked as a janitor in prison, and Davis' alleged frequent nebulizer use was belied by the fact that the medical records showed that he used it no more than twice per day. R. at 22.  In assessing the third, fourth, and fifth factors, the ALJ noted that physical therapy and cessation from smoking greatly reduced Davis' symptoms, and the ALJ detailed the various medicine and treatment regimens that have been used to help Davis cope with his conditions—many of which Davis had

abandoned.  R. at 18-19.  The ALJ also assessed the fifth factor, noting that Davis used home remedies such as using a special chair when showering, but also noting that a special chair was never prescribed.  R. at 21.  Finally, the ALJ considered Davis' overall functional limitations, as described by him, concluding that such limitations were not credible.  R. at 22.

At oral argument, Davis contended that the ALJ had failed to consider factors two and three.  Davis was unable, however, to point to any record evidence that undermines my determination that the second and third factors were considered.  To the contrary, with respect to factor two, "the location, duration, frequency, and intensity of the claimant's pain or other symptoms," 20 C.F.R. §§ 404.1529(c)(3)(ii), 416.929(c)(3)(ii), the ALJ found that the physical therapy treatment notes indicated that claimant reported "improvements in overall pain levels, increased strength, and improved sleeping."  R. at 17.  The ALJ was considering factor three, "precipitating and aggravating factors," 20 C.F.R. §§ 404.1529(c)(3)(iii), 416.929(c)(3)(iii), when she found that smoking was an aggravating factor for Davis' COPD symptoms, and that such symptoms were rendered mild when Davis stopped smoking and took his prescribed medication.  R. at 18.  Accordingly, Davis cannot show that the ALJ failed to properly assess the seven required factors before making a credibility determination.

2. *The ALJ's Use of Objective Medical Evidence*

Davis challenges the ALJ's interpretation of various portions of the objective medical evidence.  Davis argues that the ALJ minimized evidence in favor of Davis' subjective evaluation of his symptoms and over-emphasized evidence that detracted from Davis' statements.

a.   Failure to Treat

The ALJ cited Davis' failure to properly treat his condition as a factor weighing against Davis' contention that the severity of his symptoms rendered him disabled.  The ALJ noted that, with respect to Davis' lower back pain, physical therapy resulted in "improvements in overall pain levels, increased strength, and improved sleeping."  R. at 17.  The ALJ also noted that, shortly after achieving improvements in his overall pain levels, Davis discontinued his therapy sessions.  The discontinuance of therapy that had been shown to improve his symptoms, the ALJ concluded, indicated that Davis did not actually experience the level of pain of which he complained.  Had Davis truly experienced high levels of pain, he would not have discontinued treatment that had been shown to effectively reduce such pain.

Davis challenges the ALJ's conclusion, arguing that it is not supported by substantial evidence.  First, Davis contends that he initially missed treatment because he was busy obtaining counseling for alcoholism.  Second, Davis asserts that he discontinued physical therapy in its entirety because he was told by one of his doctors that it would not improve his condition.  Davis argues that the ALJ failed to properly consider his legitimate reasons for the discontinuance of physical therapy.  Davis also argues that the ALJ failed to rely on objective evidence in concluding that physical therapy had actually helped Davis' condition.

It is not necessary to evaluate the ALJ's failure to address the fact that Davis missed physical therapy to attend alcohol counseling.  That only accounted for two weeks of missed treatment and likely did not weigh heavily in the ALJ's determination that Davis was uninterested in seeking treatment for his pain.

Similarly, Davis is mistaken in his contention that there was insufficient objective evidence of the benefits of physical therapy.  The report of the physical therapist identified that Davis himself had reported improvements in overall pain levels, increased strength, and

11

improved sleeping.  R. at 710.  Furthermore, the physical therapist recommended that Davis

continue to receive physical therapy, presumably because it was improving his condition.  *Id.*

Davis is correct, however, that the ALJ (most likely unintentionally) misrepresented

facts with respect to Davis' purported reason for the complete discontinuance of physical

therapy.  The ALJ expressed skepticism at Davis' testimony that he discontinued physical

therapy because his doctor told him that it would be futile.  R. at 22.  The ALJ held that there

was no evidence in the record that Davis' doctor told him to stop treatment, and that, when asked

to identify the doctor, Davis could not remember his name.  *Id.*

Though the ALJ is substantially correct that the record lacks direct evidence of the

alleged statement, the ALJ is wrong that Davis could not identify which doctor told him that

treatment was futile.  At the hearing before the ALJ, Davis explicitly told the ALJ that Dr.

Alexandru Dinu (spelled "Alexander Daneau" in the hearing transcript) was the doctor who told

him that further physical therapy would be unlikely to improve Davis' condition.  R. at 64.

Davis' contention is corroborated by the fact that Dr. Dinu did not renew Davis' prescription for

physical therapy, though Davis' argument is weakened by the fact that Dr. Dinu did recommend

aquatic therapy.  R. at 713-14.

Though Davis correctly identified a factual error in the ALJ's written ruling, it is

important not to stray from the standard by which I review the ALJ's decision.  Having

examined all of the medical evidence and having observed Davis' testimony in person, the ALJ

concluded that Davis discontinued physical treatment on his own volition.  That conclusion is

not explicitly refuted by objective medical evidence, even though there is more evidence to

support a contrary conclusion than was apparent to the ALJ.  The ALJ's conclusion is bolstered

by that fact that Davis was discharged from his physical therapy treatment program for failure to

regularly attend.  R. at 18, 637.  Davis' contention that Dr. Dinu told him to discontinue physical therapy does not explain why he attended one out of his five last appointments, rather than formally discontinuing treatment altogether.  R. at 637.  What is clear from the record is that physical therapy improved Davis' condition, yet Davis stopped attending.

Finally, evidence that physical therapy had improved Davis' condition, R. at 710, indicates that Dr. Dinu would not have recommended discontinuing that therapy.  Rather, it supports the ALJ's conclusion that Davis' failure to continue treatment for pain was indicative of the fact that Davis' subjective evaluation of his pain was overstated.  *See Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989) (failure to seek medical attention undercuts disability claim).

b.   Lung Function

The ALJ found that Davis's pulmonary conditions—including COPD—would not inhibit his ability to perform sedentary work in a pollution-free environment.  In support of this, the ALJ pointed to the fact that, when Davis stopped smoking and took his medication, his symptoms were mild.  Citing objective medical evidence, the ALJ found that Davis' contentions to the contrary were not credible.  As a part of her determination, the ALJ found it not credible that Davis needed to use a nebulizer four times per day.

Davis challenges the ALJ's conclusion, arguing that it is not supported by substantial evidence.  Davis' main contention is that the ALJ failed to recognize that Davis continued to receive treatment for his allegedly debilitating pulmonary conditions.

Davis' contentions, though correct (R. at 845-46), do not belie the ALJ's finding.  First, it is important to recognize that the ALJ did not wholly disregard the effect of Davis' respiratory

condition.  Rather, the ALJ adopted an RFC that fully incorporated Dr. Cohn's pulmonary function findings.  R. at 20, 23, 879.[1]

The ALJ only rejected Davis' statements that he needs to use a nebulizer four times per day and lacks the respiratory function to perform sedentary work.  In support of her conclusion, the ALJ relied on evidence that Davis' condition improved after quitting smoking and taking medicine as prescribed.  R. at 529.  Furthermore, the ALJ relied on multiple reports from medical professionals who indicated that Davis needs to use his nebulizer—at most—twice per day.  R. at 666, 844.[2]  The fact that Davis continued to receive treatment for his pulmonary conditions does not require the ALJ to take as true Davis' subjective assertions of his limitations.  It was not patently unreasonable for the ALJ to find that, with proper treatment and without smoking, Davis' pulmonary function did not render him unsuitable for sedentary work in environmentally clean conditions.

c.   Lumbar Spine

The ALJ held that Davis' lumbar spine condition—a degenerative disc disease affecting L4-5 and L5-S1—would not inhibit his ability to perform sedentary work.  R. at 18.  In support of her conclusion, the ALJ found that, based on objective medical evidence, Davis had relatively mild degenerative changes in his L4-5 and L5-S1.  The ALJ also observed that there was "no indication that the claimant was ever under consideration for any surgery related to his complaints of back pain."  R. at 18.

---

[1] In the ALJ's decision, Dr. Lauren Cohn is referred to as Dr. Cohen.  For the purposes of this decision, I use her name as it appears on her functional assessment, *see* R. at 876.

[2] As noted at oral argument, the need to nebulize twice per day does not render Davis unsuitable for sedentary work.  Though the vocational expert testified that having to nebulize once during the work day would render Davis unable to find employment, the vocational expert did not offer testimony regarding Davis' ability to nebulize in the morning before work and then in the evening after work.  R. at 85.  There is nothing in the record to suggest that nebulizing before and after work would alter Davis' RFC or ability to find a job.

Davis challenges the ALJ's conclusion, arguing that it is not supported by substantial evidence.  Davis contends that the ALJ relied too heavily on Dr. Jonathan Grauer's findings and did not consider the findings of another doctor, Dr. Alexandru Dinu, who had evaluated Davis' lumbar spine condition.  Davis further argues that, even if the ALJ were correct to rely solely on Dr. Grauer's opinion, the fact that Davis is not a surgical candidate does not disprove his contentions that he suffers debilitating pain.[3]

Davis' contention that the ALJ failed to rely on Dr. Dinu's evaluation is overstated. Though it is true that the ALJ arguably misstated the record when she found that Davis had never been considered a surgical candidate—Dr. Dinu did mention in the initial evaluation that Davis "may need to be evaluated in the future for the potential of surgical intervention" (R. at 714)— the ALJ did take Dr. Dinu's findings into consideration.  Though not referring to Dr. Dinu by name, the ALJ found that Davis had sought treatment from Dr. Dinu at Gaylord Hospital.  R. at 17.  As a result of the initial examination, Davis had an MRI of the lumbar spine in May 2012, which revealed "a small annul fissure, a small diffuse disc bulge and severe central canal stenosis due to lipamatosis with mild left neuroforaminal narrowing at L4-5."  R. at 17.  The MRI also disclosed a "small disc protrusion at L5-S1," including "mild bilateral neuroforaminal narrowing."  R. at 17.  Upon seeing the results of the MRI, the doctor referred Davis to physical therapy.

The ALJ is correct that Davis was never considered as a possible surgical candidate following his May 2012 MRI.  The ALJ may view that fact as tending to indicate that Davis'

_____

[3] At oral argument, Davis also contended that the ALJ did not give appropriate weight to Davis' canal stenosis condition.  That contention is belied by the record.  At step two of the five-step analysis, the ALJ found that Davis had a mild degenerative disc disease with severe central canal stenosis.  R. at 13.  Thus, the ALJ clearly took that into account when arriving at an RFC.  What the ALJ did not do is credit Davis' subjective statements that such canal stenosis rendered him unable to perform sedentary work.  Nor was the ALJ required to do so.  Rather, the ALJ properly assessed Davis' statements in light of other evidence in the record, finding that such statements were not credible.  I see no error in that approach.

contentions about his debilitating condition are overstated.  It is important to remember that the

ALJ's findings were with respect to the credibility of Davis' statements.  At no point does the

ALJ make a finding that is contrary to objective medical evidence.  The ALJ agreed that Davis

has a mild lumbar spine condition, yet refused to credit Davis' subjective statements regarding

the intensity and persistance of the pain as a result of that condition.  It is not within my

discretion to reject a credibility determination based on the facts that the ALJ properly

considered.

Finally, though not briefed and only raised at oral argument, Davis contends that the ALJ

failed to afford the proper deference to Dr. Yappa in accordance with the Treating Physician

Rule.[4]  *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. §

404.1527(d)(2)) (opinion of claimant's treating physician given "controlling weight" if supported

by objective medical evidence and not inconsistent with other record evidence).  At oral

argument, Davis contended that the ALJ violated the treating physician rule by failing to give

controlling weight to Dr. Yappa's opinion regarding Davis' ability to perform sedentary work.

What Davis failed to mention—or refute—was the fact that the ALJ did consider Dr.

Yappa's opinion and found it to be unsupported by other evidence in the record.  R. at 19-20.

Specifically, the ALJ found that Dr. Yappa's functional assessment was identical to that of Nurse

Caplan (sometimes spelled "Kaplan").  R. at 20.  The ALJ concluded that Dr. Yappa had merely

"co-signed" Nurse Caplan's assessment.  *Id.*  Furthermore, the ALJ devoted extensive analysis to

why she refused to give controlling weight to Caplan's assessments.  *Id.*  The primary reason that

the ALJ failed to give Caplan's opinion evidence controlling weight is that it could not properly

be considered Caplan's opinion.  *Id.*  Pointing to the actual form that Caplan filled out, *see* R. at

---

[4] At oral argument, Davis also contended that the ALJ failed to give Dr. Cohn's assessment controlling weight.  That
contention is refuted by the fact that the ALJ completely incorporated Dr. Cohn's assessment into Davis' RFC.  R. at
20, 23, 879.

887, it was clear that Caplan was just relaying Davis' own subjective statements about his condition.  Caplin did this rather overtly by using quotation marks for instances in which Davis was relaying his own impression of his medical condition.  Thus, though Caplan's opinion is entitled to great weight, Davis' subjective statements are not entitled to greater weight merely because Caplan documented them on a functional assessment form.  The ALJ explained her finding to that effect in detail and sufficiently explained why the assessment was not given controlling weight.[5]

3.   *The ALJ's Evaluation of Davis' Testimony/Subjective Statements*

In addition to evaluating the objective medical evidence, the ALJ also used Davis' own statements and testimony to support her credibility finding.  Davis challenges the ALJ's conclusions regarding various statements that he made, arguing that they were taken out of context or given too much weight.

a.   Davis' reports to doctors about canal stenosis operation and pain management

In concluding that Davis lacked credibility, the ALJ cited inconsistencies in Davis' reports to his treating physicians.  The ALJ found that Davis had reported to Meriden Community Health Center ("MCHC") that he was going to have surgery for the canal stenosis condition in his back.  R. at 18.  In fact, as the ALJ notes, Davis was not under consideration for surgery at that time.  The ALJ also implied that Davis' request to be referred to a pain management program was less than genuine—though the ALJ did not say so explicitly, it seems

---

[5] It is important to note that the ALJ clearly relied on both objective medical evidence and Davis' subjective statements in fashioning the RFC.  After considering all of the evidence, the ALJ gave Davis the most restrictive RFC—finding that he is only able to perform sedentary work, and that Davis is unable to climb ladders, ramps, scaffolds or stairs, and must avoid even moderate exposure to environmental irritants, such as fumes, odors, or gasses.  R. at 17.  I am not faced with a situation in which an ALJ failed to take the plaintiff's limitations into account.  Rather, the highly restrictive RFC shows that the ALJ did consider Davis' limitations—though not to the extent that Davis had hoped.

that the ALJ believed that Davis' request for a pain management program was a veiled attempt to gain access to opioids.

Davis argues that the ALJ put too much emphasis on the fact that Davis misrepresented his status a surgical candidate.  Furthermore, Davis argues that at no point did he ever misrepresent his level of pain to receive opioids.

Davis is correct to take issue with any implication that he improperly sought a prescription for opioids.  The record is replete with medical reports that Davis was forthright in his desire to avoid opioids as a result of his past addiction.  R. at 713, 825.  To the extent that the ALJ intended such an implication, it is not supported by substantial evidence.

Davis' challenge to the ALJ's interpretation of his statements regarding possible surgery, however, is less compelling.  There is no question that Davis told MCHC that he was going to have surgery for his back condition.  That statement was factually incorrect at the time it was made.  Though there may have been a good explanation for making such statement, that is for the ALJ to determine, not the reviewing court.

Reviewing the ALJ's decision, it is clear that the ALJ focused on the portion of Davis' statements to MCHC relating to his future back surgery.  It is not apparent that Davis' request for a pain management program played a role in the ALJ's determination of Davis' credibility.  Because the ALJ is free to draw conclusions from Davis' misstatements, the ALJ committed no error in that respect.

### b.  Davis' focus on documenting treatment for disability application

Finally, the ALJ found Davis lacked credibility because there was evidence in the record showing that Davis sought treatment for the purpose of strengthening his disability application.

Davis challenges that finding, arguing that the ALJ overlooked Davis' non-strategic reasons for wanting to document his alleged disability.

Davis does not dispute that there is evidence in the record to support the fact that Davis sought treatment for the purpose of strengthening his disability application.  R. at 819 ("[Patient] [w]ants me to set him up with 'lots of doctors' because he has a disability hearing coming up.").  The ALJ concluded that Davis' attempt to bolster his disability application indicates that he had an ulterior motive for seeking treatment.  Rather than seeking treatment for an actual disability, the ALJ concluded that Davis sought treatment in order to make him look like a stronger disability applicant.  Such a conclusion is supported by the evidence.  R. at 819.  The fact that Davis might have other good reasons for wanting to document his disability does not mean that the ALJ's conclusions are patently unreasonable.  Furthermore, at oral argument, Davis admitted that he did not submit any evidence to refute the statement that he wanted to be set up with "lots of doctors."  Accordingly, the ALJ did not commit any error in drawing an adverse inference from Davis' statements regarding his disability application.

4.  *Other Factors Weighing Against Credibility*

Though not raised by the plaintiff, it is important to note other factors that went into the ALJ's credibility determination.  First, at the hearing before the ALJ, Davis was caught misrepresenting his past history of smoking.  R. at 69-70.  Davis testified that he had not smoked in four years.  Pointing to the medical records, the ALJ noted that Davis had told his treating physicians that he had in fact stopped smoking only two years prior to the hearing.  After quibbling with the ALJ's questions, Davis admitted that his prior testimony was not accurate.  R. at 70.  Though that instance was not mentioned in the ALJ's decision, it was yet another piece of evidence that supports the ALJ's credibility determination.

Second, as noted in the ALJ's decision, Davis testified that he worked as a janitor while he was incarcerated (from 2009-2011). R. at 22, 73. Though the ALJ did not fully detail how Davis' work as a janitor undermines his alleged disability, the implication is clear. A janitor needs to be on his feet for long periods of time, needs to be able to carry a non-trivial amount of weight, and most likely needs to bend down and/or reach up to access certain items that must be cleaned. Such activity is far greater than the amount of activity that Davis contends he can perform. Furthermore, work as a janitor is far more demanding than the sedentary work that the ALJ found Davis could perform.

The fact that Davis' work as a janitor occurred prior to the alleged onset of his disability does not render it irrelevant. In reports to treating physicians, Davis contended that his back pain began in 2006 and has been the cause of significant limitations ever since. Surely if he could work as a janitor, his limitations were not as great as he contends. There is no specific incident in 2011 or 2012 that would make those limitations markedly different from what they were when he worked as a janitor. Accordingly, Davis' past work history indicates that his current assessment of his inability to perform sedentary work lacks credibility.

## IV.    Conclusion

Reviewing the ALJ's decision in its entirety, I hold that the ALJ did not err in her finding that Davis's subjective statements lacked credibility. The ALJ "weigh[ed] the credibility of the claimant's testimony in light of the other evidence of record." *Genier*, 606 F.3d at 49. The conclusions the ALJ drew were supported by substantial evidence in the record and were not "patently unreasonable." *See Pietrunti*, 119 F.3d at 1042. Therefore, Davis' motion to vacate the ALJ's decision is denied and the Commissioner's motion to affirm is granted. The Clerk shall enter judgment in favor of the Commissioner and close the file.

So ordered.

Dated at Bridgeport, Connecticut, this 21st day of September 2016.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge